## TRIMMER *v.* FISH *et al.*

(*Supreme Court, General Term, Fifth Department.* June, 1891.)

MORTGAGES—FORECLOSURE—RIGHTS OF PURCHASER.

In an action on two promissory notes for $190 and $108, respectively, made by defendant G., and indorsed by defendant L., the wife of G., and delivered to one A., who assigned them to plaintiff after maturity, defendants alleged as a counter-claim that, when the notes sued on were given, the land of defendant L. had been advertised for sale under a mortgage for $3,000; that the premises were subject to a second mortgage for $240; that the $108 note sued on was given for a debt of G., for which L. was not liable; that in order to induce L. to indorse the second note, and to induce G. to procure her indorsement, A., plaintiff's assignor, promised that

he would purchase L.'s land at the foreclosure sale, and procure a loan thereon to pay the purchase price, the $240 mortgage, and the note sued on, and then convey the land to defendants, (G. and L.,) and take from them a second mortgage for any balance that might remain unpaid on the $240 mortgage and the two notes in suit; and that, relying on such promise, defendants made and indorsed the $108 note, and permitted A. to purchase the land at the foreclosure sale. The answer also alleged that A. purchased the land, but refused to convey it to defendants, as he had agreed to do, and that it was worth more than the amount bid by A. Defendant G. testified to conversations with A. concerning the alleged agreement, in which he was partially corroborated by his wife, (defendant L.) The testimony of G. was contradicted by A., and A. was corroborated by a witness who was present when the notes were made and indorsed. · There was uncontradicted evidence that G., instead of relying on A. to purchase at the foreclosure sale, endeavored to prevent the sale. *Held*, that the evidence, together with the improbable character of the transaction, was not sufficient to support a verdict for defendants.

Appeal from Monroe county court.

Action by Sylvester Trimmer against George T. Fish and E. Louisa Fish. From a judgment entered on a verdict of a jury, and from an order denying plaintiff's motion for a new trial on the minutes of the court, plaintiff appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*Mr. Turk*, for appellant.    *D. N. Salisbury*, for respondents.

DWIGHT, P. J. The action was against the defendant George T. Fish as maker, and the defendant E. Louisa Fish as indorser, of two promissory notes, one for $190.93, and one for $108.50, made, indorsed, and delivered to one Arthur W. Lawton, and by him .transferred to the plaintiff after maturity. There was no denial of the facts establishing the plaintiff's cause of action, but an affirmative defense, denominated a "counter-claim," was interposed first by the joint answer of the two defendants, and afterwards by the separate amended answer of the defendant Mrs. Fish. Those answers contained allegations to the effect that, at the time the two notes were so made and indorsed, Mrs. Fish was the owner of an equity of redemption in certain real estate in the city of Rochester; that prior to that time a judgment had been obtained by one Holden foreclosing a certain mortgage on such real estate for $3,000 and interest, and that the premises had been advertised to be sold, on such judgment, on the day after the notes were delivered; that at the same time there was a second mortgage on the premises, outstanding and due, given by the defendant Mrs. Fish to one Charles F. Lawton, for $240 and interest; that the second of the notes in suit was given for an indebtedness of the defendant George T. Fish, but for which the defendant Mrs. Fish was not liable; that to induce the defendant Mrs. Fish so indorse the second note, and to induce the defendant George T. Fish to procure her indorsement, "the said A. W. Lawton undertook and agreed with the defendants herein that upon such sale of said premises under the judgment, so advertised to take place, he would buy the same, and thereafter procure a loan thereon of funds which it would be necessary, in whole or in part, to use in payment of the amount of the purchase price thereof, and the said mortgage of $240, and the said two notes, and then convey the same to these defendants, and take from them a second mortgage upon the same for the balance, if any, over and above the said loan so to be procured, remaining unpaid upon the said mortgage for $240 and the said two notes;" that, relying upon such agreement, the defendant George T. Fish procured, and the defendant Mrs. Fish made, the indorsement of the second note; that on the sale, as so advertised, A. W. Lawton bid off the property for the sum of $3,700; that the defendant George T. Fish was present at the sale, but, "relying upon the agreement by Lawton, refrained from bidding thereon, and permitted the said Lawton to purchase the said premises." The answers further allege that, after bidding off the property as aforesaid, A. W. Lawton directed the conveyance of the same to be made to one A. L. Lawton, his brother; that A. W.

Lawton has never conveyed the premises, nor caused them to be conveyed, to the defendants, but has always neglected and refused so to do upon request. There is also the allegation that at the time of the sale the premises were worth more than the amount for which the same were sold on the foreclosure sale, and the amount due on the mortgage to Charles F. Lawton and upon the two notes. There was no other allegation of damage sustained by the defendants by reason of the breach of the agreement of Lawton, but the case was tried, without objection, upon the theory that a counter-claim in behalf of both defendants had been pleaded, and it was submitted to the jury upon the single question whether the agreement alleged in the complaint was established by the evidence. On that question we think the verdict was clearly against the weight of the evidence, and that the motion for a new trial ought to have been granted. The defense was strictly affirmative, and the burden of proof was on the defendants. The strength of their case is in the testimony of the defendant George T. Fish, which is as follows: "I had a conversation with Arthur W. Lawton. I think it was on the street, but I am not positive. He wanted the indorsement of my wife, and also her mother. I told him I could not give the indorsement of her mother; that she was not well, and I would not ask it of her. He said he would do as he talked,—he would attend the sale, and bid in the property, and give us a chance to pay off; and I told him that perhaps Mrs. Fish would indorse it, but I would not ask her mother to; and he said, 'Very well, let her indorse it,' and he would do as we had talked. Previous to this time we had talked several times in reference to the sale of the property, which was advertised to take place January 22d. He said he would help us out on that. He said he had some money in the bank, several hundred dollars, and would save some for that purpose. I told him that if he would do that, and bid it in, I would include the whole indebtedness to himself and his brother; that his brother had a claim of about $100, I thought, a balance on an old note; that he could put that in, and also the second mortgage, which was given to another brother, Charles F. Lawton. And he said he would take a second mortgage for the whole indebtedness; he would get the first mortgage for what he could, and would put in some money, if necessary, and take a second mortgage, and give us an opportunity to pay for it. That was the conversation to which he referred on this day in question." This evidence, at the best, but sparingly supports the allegation of an agreement on the part of Lawton to purchase the property on the foreclosure sale, to raise money sufficient, if possible, to pay the purchase price and the second mortgage, held by Charles Lawton, and the amount of the two notes, by a loan secured by a new first mortgage on the premises, and then to convey to the defendants upon being reimbursed, or secured by a new second mortgage on the same premises, for the amount by which the sum of those payments to be made by him should exceed the amount of the loan he might obtain on the premises; and all this in consideration, merely, that Fish should procure his wife's indorsement on the second of the two notes for $108.50. The testimony of Fish is but partially corroborated by that of his wife, the other defendant, and it is directly contradicted in all its parts by that of Lawton, which is corroborated by that of his brother, A. L. Lawton, who testifies that he was present at the time the indorsement of Mrs. Fish to the second note was procured, and to the agreement under which it was done.

But, aside from the direct evidence on the question in dispute,—and of which it cannot fairly be said that the preponderance is in favor of the defendants,— the circumstantial evidence to the contrary is very strong. It is highly improbable that Lawton, upon the sole consideration of obtaining the indorsement of Mrs. Fish to a note of $108, would have made the agreement alleged. It involves the giving of his personal bond, secured by a mortgage on the premises to be purchased, for an amount sufficient to pay the purchase price, whatever that might be, even to the full value of the property, and the second

mortgage of $240, and the amount of the two notes; or, if he should be unable to obtain a loan to that extent on the property, he must advance the money required, and depend upon the second mortgage on the same property for its reimbursement. And the noticeable thing about the arrangement is that in no event was he to realize any profit whatever from the transaction. All that he could hope for was to secure the payment of his two notes, for the larger of which Mrs. Fish was already liable, and, if any gain was to result, it would be the defendants', and not his. Moreover, the conduct of the defendant Fish at the sale was entirely inconsistent with the theory of the defense as to the agreement of Lawton. The uncontradicted evidence is that at the sale, so far from relying upon Lawton to purchase the property, Fish was there attempting to prevent the sale. He read a paper which declared that the sale was irregular, and warned all persons against bidding; and he personally forbade Lawton to bid on the property. The affirmative defense alleged and relied upon was clearly not established by the evidence on the trial, and the motion for a new trial should have been granted.

Judgment and order appealed from reversed, and a new trial granted, with costs to abide the event.